## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
WILLIE THOMAS KELLY, JR.,       )
                                )
          Plaintiff,            )
                                )
     v.                         )     1:12cv1385
                                )
ROBERT C. LEWIS, et al.,        )
                                )
          Defendants.           )
```

### MEMORANDUM OPINION AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommendation on the "Motion for Summary Judgment for Defendant Dirk Berghmans" (Docket Entry 49) (the "Summary Judgment Motion"). For the reasons that follow, the Court should grant the Summary Judgment Motion.

### BACKGROUND

### I. Procedural History

Alleging various violations of his constitutional rights during his incarceration by the North Carolina Department of Public Safety (the "NC DPS"), Willie Thomas Kelly, Jr. ("Plaintiff") commenced an action pursuant to 42 U.S.C. § 1983 against multiple NC DPS employees, including Dirk Berghmans ("Defendant"). (See Docket Entry 6; see also Docket Entry 7 (analyzing Plaintiff's claims).) Because Plaintiff, "a prisoner[,] seeks redress from a[n] . . . employee of a governmental entity," 28 U.S.C.

§ 1915A(a), the Court reviewed Plaintiff's Complaint (see Docket Entry 7) and dismissed most of his claims for "fail[ing] to state a claim upon which relief may be granted," 28 U.S.C. § 1915A(b)(1). (See Docket Entry 12 at 1-2.)[1]  However, the Court permitted "the claim that Defendant . . . actively allowed a gang member to assault Plaintiff with a weapon" to proceed.  (Id. at 2; see also Docket Entry 7 at 7 (analyzing Plaintiff's allegation "that a correctional officer [Defendant] intentionally permitted an actual battery against his person," and recommending that "[t]he lawsuit should proceed on this claim and this claim alone").)

Thereafter, Plaintiff filed an Amended Complaint against Defendant and multiple other individuals.  (See Docket Entry 20.) Pursuant to 28 U.S.C. § 1915A(a), the Court reviewed the Amended Complaint (see Docket Entry 21), and dismissed "all claims in Plaintiff's Amended Complaint . . ., with the sole exception that Plaintiff's claim against Defendant . . . for actively allowing a gang member to assault Plaintiff with a weapon may proceed in this action" (Docket Entry 44 at 1-2).  (See also Docket Entry 21 at 1 ("accept[ing] Plaintiff's Amended Complaint, but recommend[ing] dismissal without prejudice of all of Plaintiff's claims — except his claim against Defendant . . . for actively allowing a gang

---

    1   Citations herein to Docket Entry pages utilize the document's internal pagination if unified internal pagination exists.  In the absence of such pagination, the Docket Entry page citations utilize the CM/ECF footer's pagination.

2

member to assault Plaintiff with a weapon").) The parties subsequently engaged in discovery regarding the sole claim in this action. (See Text Order dated Jan. 8, 2016 (establishing Scheduling Order).) Following close of discovery, Defendant filed the Summary Judgment Motion (see Docket Entry 49), to which Plaintiff responded (see Docket Entries 61-62).

## **II. Underlying Events**

Since 2010, Plaintiff has been a prisoner at Lanesboro Correctional Institution (the "Lanesboro CI"). (See Docket Entry 20 at 35, ¶ 2; see also Docket Entry 61 at 4.) At Lanesboro CI, Plaintiff shared a dorm with a gang member named Reggie Cannon ("Cannon"). (See Docket Entry 6 at 4; Docket Entry 20 at 35, ¶ 4.) Plaintiff asserts that, on September 14, 2012, Cannon "struck[]" Plaintiff after Defendant (i) permitted Cannon to leave the dorm "to get [a] weapon" and (ii) "pop [Plaintiff's] door on Reggie Cannon order" (the "Claim"). (Docket Entry 6 at 4; see also Docket Entry 20 at 35, ¶ 4 ("Plaintiff was housed in Dorm-D Union 2 side, placing [him] in dorm with inmate R. Cannon, whom [Defendant] pop[p]ing [Plaintiff's] door on his order, causing body injury").)[2] Following this incident, "Plaintiff wrote Grievance 4865-12-1447" (the "Grievance"). (Docket Entry 6 at 4.)

---

2  For legibility purposes, this Opinion uses standardized capitalization in all quotations from the parties' materials.

3

Defendant's supporting affidavits and documentary evidence present a contrasting picture of those September 2012 events. According to NC DPS incident reports, medical records, and associated affidavits:

NC DPS Officer Rice noticed that Plaintiff bore a swollen left eye and cut lip when he returned from lunch on September 14, 2012. (See Docket Entry 55 at 3.) Officer Rice informed the unit sergeant, Sergeant Preston, of Plaintiff's injuries, and Plaintiff "was taken to Medical to be treated." (Id.) Plaintiff told the NC DPS nurse who treated his eye injury "that it happened while showing someone a basketball move." (Id. at 4; see also Docket Entry 57 at 4 (noting, in his medical records, that Plaintiff "stated that 'I got the injury showing my basketball moves to a guy'").) Following Officer Rice's notification, Sergeant Preston reviewed video footage that showed Cannon entering Plaintiff's cell around 4:15 p.m. on September 13, 2012. (Docket Entry 55 at 3.) Per the video, Cannon exited Plaintiff's cell "approximately one minute later acting very aggressive and he took his shirt and threw it in the trash can" before returning to his own cell. (Id.) Following Sergeant Preston's review of the video footage, NC DPS officers placed Cannon and Plaintiff "in segregation pending investigation." (Id. at 4-5.)

NC DPS Sergeant Paul Davis investigated this incident. (See id. at 2.) He collected written statements from all staff and

4

inmates involved in, or possessing "any knowledge of[,] the September 13, 2012 incident." (Id.)  In that regard, Sergeant Davis "did not take a written statement from [Defendant] because he was not involved in the September 13, 2012 incident." (Id.)[3]  In addition, Cannon and Plaintiff refused to comment on the incident. (See id. at 3; see also id. at 10 (Plaintiff's "Statement by Witness" form, indicating his refusal), 11 (Cannon's "Statement by Witness" form, stating "'no statement'").)

Based on his investigation, Sergeant Davis recommended that Plaintiff be charged with fighting. (Docket Entry 54 at 68.)  On September 24, 2012, Plaintiff pleaded guilty to the fighting offense (see id. at 77-78; see also id. at 4) and "was placed in segregation for 15 days to deter future behavior" (id. at 4).

On October 28, 2012, Plaintiff filed the Grievance. (See Docket Entry 53 at 15.)  The NC DPS officials involved in reviewing the Grievance perceived it as a challenge to the fairness of an NC DPS disciplinary process. (See, e.g., id. at 16 ("In response to your Grievance, you were given a fair hearing by [the] Disciplinary Hearing Office; your rights were not violated."), 17 ("[Plaintiff] asserts that he received an unfair disciplinary report.").)  At the conclusion of the grievance process on December 6, 2012, NC DPS officials dismissed the Grievance "for lack of supporting

---

  3  Defendant avers that he first learned of Plaintiff's allegations, which Defendant denies, when he "was notified about this lawsuit" (Docket Entry 56 at 2).  (See id. at 1-2.)

evidence." (Id. at 17.) Shortly thereafter, Plaintiff initiated this lawsuit. (See Docket Entry 1.)

## **DISCUSSION**

### **I. Summary Judgement Standards**

"The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The movant bears the burden of establishing the absence of such dispute. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Moreover,

> [w]here, as here, the movant seeks summary judgment on an affirmative defense, [he] must conclusively establish all essential elements of that defense. When the defendant has produced sufficient evidence in support of [hi]s affirmative defense, the burden of production shifts to the plaintiff to come forward with specific facts showing that there is a genuine issue for trial.

Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc., 673 F.3d 294, 299 (4th Cir. 2012) (citation and internal quotation marks omitted).

In analyzing a summary judgment motion, the Court generally "tak[es] the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). However,

6

> facts must be viewed in the light most favorable to the
> nonmoving party only if there is a "genuine" dispute as
> to those facts. . . . When opposing parties tell two
> different stories, one of which is blatantly contradicted
> by the record, so that no reasonable jury could believe
> it, a court should not adopt that version of the facts
> for purposes of ruling on a motion for summary judgment.

Scott v. Harris, 550 U.S. 372, 380 (2007). Finally, "any factual assertion in the movant's affidavits will be accepted . . . as being true unless the [non-movant] submits his own affidavits or other documentary evidence contradicting the assertion." Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992) (internal quotation marks omitted).

## II. Exhaustion Requirement

Pursuant to the Prison Litigation Reform Act of 1995, as amended (the "PLRA"), prisoners must first exhaust "such administrative remedies as are available" before filing a federal lawsuit challenging prison conditions. 42 U.S.C. § 1997e(a). This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The defendant bears the burden of establishing that a prisoner failed to exhaust administrative remedies. See Jones v. Bock, 549 U.S. 199, 216 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints.").

Nevertheless, the "exhaustion of administrative remedies under the PLRA is a question of law to be determined by the judge." Drippe v. Tobelinski, 604 F.3d 778, 782 (3d Cir. 2010); see also Lee v. Willey, 789 F.3d 673, 677 (6th Cir. 2015) ("[A]ll . . . of the circuits that have considered the issue agree that judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury." (internal quotation marks omitted)). A prisoner satisfies the PLRA exhaustion requirement when he "ha[s] utilized all available remedies 'in accordance with the applicable procedural rules,' so that prison officials have been given an opportunity to address the claims administratively." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008) (quoting Woodford v. Ngo, 548 U.S. 81, 88 (2006)). Thus, the relevant prison's grievance procedures determine the steps a prisoner must take to meet his exhaustion obligations. See id. at 726; see also Jones, 549 U.S. at 218 ("Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements . . . that define the boundaries of proper exhaustion.").

Pursuant to N.C. Gen. Stat. § 148-118.1, the NC DPS provides an Administrative Remedy Procedure (the "ARP") for inmate grievances. (See, e.g., Docket Entry 53 at 1-2 (discussing ARP);

see also id. at 4-14 (providing copy of ARP issued on August 1, 2013).) At the time of the events underlying this litigation,[4] the ARP imposed a three-part system[5] (described below) for submitting and reviewing unresolved inmate grievances. See generally State of North Carolina Department of Correction Division of Prisons, Policy & Procedures, Administrative Remedy Procedure, http://www.doc.state.nc.us/dop/policy_procedure_manual/G.0300_09_24_07.pdf (last visited Jan. 24, 2017). That ARP mandated that the inmate file a formal grievance within one year of the challenged event. See ARP, Ch. G, Section .0306(b)(2) (explaining that "a grievance may be rejected at any level if . . . [t]here has been a time lapse of more than one year between the event and submission of the grievance"). It further required that the inmate file a separate grievance for each challenged event. See ARP, Ch. G, Section .0306(b)(4) (explaining that "a grievance

---

    4  The Court may take judicial notice of the relevant ARP, cited herein as "ARP, Ch. G, Section ____." See Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (observing that the Court "may properly take judicial notice of matters of public record").

    5  The ARP also encouraged inmates, prior to initiating the formal grievance review process, to engage in "informal communication with responsible authorities at the facility in which the problem arose," on the grounds that "[m]ost grievances can be resolved quickly through [such] informal communication." ARP, Ch. G, Section .0301(a).

9

may be rejected" if it "request[s] a remedy for more than one incident").[6]

"Step 1" in the grievance process obliged inmates to "submit a written grievance on Form DC-410." ARP, Ch. G, Section .0304(a). To complete this form, the inmate had to provide his name, number, location, "Grievance Statement," desired remedy, and signature, as well as the date upon which he executed the form. (See Docket Entry 53 at 15); see also Moore, 517 F.3d at 721 (detailing Form DC-410's contents). NC DPS officials had to provide a written response to the grievance within 15 days from the date on which they accepted such grievance. ARP, Ch. G, Section .0307(f)(1); see also ARP, Ch. G, Section .0310(a) (outlining "Step 1 Review"). Within 24 hours of receiving the Step 1 response, the inmate could appeal this response by marking the "Appeal to Step Two" option on Form DC-410. (See Docket Entry 53 at 16.)

At "Step 2," NC DPS officials had to provide a "formal written response" within 20 days from the date of such appeal request. ARP, Ch. G, Section .0307(f)(2); see also ARP, Ch. G, Section .0310(b) (outlining "Step 2 Review"). By selecting the "Appeal to Secretary, DPS" option on Form DC-410 within 24 hours of receiving

---

6 Except in emergency situations — "defined as matters which present a substantial risk of physical injury or other serious and irreparable harm to the grievant if regular time limits are followed," ARP, Ch. G, Section .0308(a) — an inmate could not submit a new grievance until his "initial grievance has completed Step 2 review or has been resolved," ARP, Ch. G, Section .0304(b). See ARP, Ch. G, Section .0304(d); ARP, Ch. G, Section .0308.

10

the Step 2 response, the inmate could likewise appeal that response. (See Docket Entry 53 at 16.) In turn, officials had to provide a response at "Step 3" within 50 days from the date of that appeal request. See ARP, Ch. G, Section .0307(f)(3)-(4); see also ARP, Ch. G, Section .0310(c) (outlining "Step 3 Review"). The Step 3 decision "constitute[d] the final step of the Administrative Remedy Procedure." ARP, Ch. G, Section .0310(c)(6).[7]

### III. Exhaustion Analysis

#### A. Relevant Assertions

Defendant asserts that Plaintiff failed to exhaust administrative remedies concerning the Claim. (See, e.g., Docket Entry 49 at 1; Docket Entry 50 at 7-10.) As evidence of Plaintiff's failure, Defendant presents the affidavits of Finesse G. Couch ("Couch") (Docket Entry 52) and Jerline Bennett ("Bennett") (Docket Entry 53). (See Docket Entry 50 at 9 (citing those affidavits).)

According to those affidavits:

Couch serves as the Executive Director of the North Carolina Inmate Grievance Resolution Board (the "IGRB") (Docket Entry 52, ¶ 3), whose "review is the final tier, Step Three (Step 3) of the inmate grievance procedure and constitutes exhaustion of the administrative remedy" (id., ¶ 5). Couch examined the IGRB

---

 7   Thus, "[f]rom filing to final disposition," the entire grievance process lasted no more 90 days. ARP, Ch. G, Section .0307(a).

11

"[r]ecords for all Step 3 Grievance Appeals received from [Plaintiff] from January 1, 2012 through January 1, 2016," but "was not able to find any grievance appeal record pertaining to an assault by a gang member filed by [Plaintiff] during this time period." (Id., ¶ 6.)

Moreover, Bennett served as Program Director at Lanesboro CI in 2012 (Docket Entry 53, ¶ 4), in which role she "was responsible for screening all inmate grievances at Lanesboro CI" (id., ¶ 7).[8] "At all relevant times herein, Lanesboro CI has complied with the ARP policy," and, "[u]pon information and belief, the ARP has never been denied to any Lanesboro CI inmate irrespective of his custody or disciplinary status." (Id., ¶ 11.) Once accepted, a grievance "is recorded in Lanesboro CI's grievance log, placed in the file[,] and the inmate is provide[d] a copy." (Id., ¶ 13.) However, neither the "computer database" nor the "Lanesboro CI's grievance log and file" contains any grievance "filed by [Plaintiff] that involved a[] use of force incident on or about September 13, 2012." (Id., ¶¶ 14-15.) Instead, the only grievance "filed by [Plaintiff] during that time period is attached [to Bennett's affidavit] as Exhibit B" (id., ¶ 17), which contains only the Grievance (see id. at 15-17).

---

[8] As noted above, Plaintiff "is an inmate housed at Lanesboro CI." (Id., ¶ 6.)

12

Plaintiff provided two responses to the Summary Judgment Motion: "Plaintiffs Answer to Defendant Berghman's Motion for Summary Judgement" (Docket Entry 61) (the "Answer") and "Memorandum of Law in Support of Plaintiff's Opposition to Defendant Berghman's Motion for Summary Judgement" (Docket Entry 62) (the "Memorandum"). Although the Answer and Memorandum both bear Plaintiff's notarized signature, neither contains language attesting to the validity of the assertions made therein. (See, e.g., Docket Entry 61 at 5; Docket Entry 62 at 17.)

In relevant part, the Answer states:

> I.
> Plaintiff failed to exhaust his administrative remedies.
> Answer: See Affidavit of Jerline Bennett, Document 53, Pages 15, 16, and 17 of 17. *Exhibit-A of Memorandum of Law pg. 5-7.

(Docket Entry 61 at 1.) In turn, the Memorandum summarizes "the case before the Court" as follows:

> The Plaintiff . . . alleges that the Defendant . . . was deliberately indifferent and failed in his duty to protect the Plaintiff against assault by a validated, inmate gang member, Reggie Cannon, who was housed in the same Pod E as Plaintiff. Plaintiff submitted a grievance in the matter (see the affidavit by Jerline Bennett, Doc. 53, Pages 15, 16, & 17 of 17) in which he appealed through all three steps without any satisfaction.

(Docket Entry 62 at 1 (emphasis omitted).) The Memorandum further specifies (i) "[See Exhibit B]" above the words "Pod E" and (ii) "Exhibit-A" above the words "see the" in the "see the affidavit by Jerline Bennett" parenthetical. (Id.)

13

"Exhibit-A" to the Memorandum contains Bennett's three-page affidavit (without exhibits). (See id. at 5-7.) In handwritten notations, Plaintiff identifies the first page of this affidavit — which constitutes page five of the Memorandum — as page 15 of Docket Entry 53. (See Docket Entry 62 at 5.) He similarly identifies the successive pages of the affidavit as pages 16 and 17 of Docket Entry 53. (See Docket Entry 62 at 6-7.)[9] Plaintiff further presents as Exhibit B to Bennett's affidavit a combination of the first page of the Grievance (see Docket Entry 62 at 13) and the entirety of Grievance Number 4865-13-1228, filed on September 24, 2013 (the "2013 Grievance") (see id. at 14-16). However, Plaintiff provides no further elaboration or clarification regarding his exhaustion argument. (See Docket Entries 61, 62.)

**B. Analysis**

Defendant's proffered evidence establishes that Plaintiff failed to exhaust his administrative remedies on the Claim. To meet his PLRA exhaustion requirement, Plaintiff needed to properly grieve the Claim through the ARP's three-step grievance resolution process. See Jones, 549 U.S. at 218; see also ARP, Ch. G, Section .0310 (specifying procedures for each step of the three-part process). Couch's affidavit establishes that Plaintiff failed to

---

9 In other words, the material that Plaintiff presents as pages five through seven of his Memorandum constitutes the first three pages of Docket Entry 53 (whereas pages 15 through 17 of Docket Entry 53 contain the Grievance). (Compare Docket Entry 62 at 5-7, with Docket Entry 53 at 1-3, 15-17.)

14

pursue any grievance regarding "an assault by a gang member" to Step 3 (Docket Entry 52, ¶ 6), "the final tier . . . of the inmate grievance procedure [that] constitutes exhaustion of the administrative remed[ies]" (id., ¶ 5). In addition, Bennett's affidavit establishes that Plaintiff failed to successfully initiate the grievance process regarding "a[] use of force incident on or about September 13, 2012," whether involving Defendant or any other individual. (Docket Entry 53, ¶¶ 15-16.) Bennett's affidavit further establishes that the only grievance Plaintiff filed in the relevant period remains the Grievance (id., ¶ 17), which challenges a disciplinary proceeding and punishment Plaintiff experienced (see id. at 15-17).

More specifically, the Grievance states:

> Plaintiff . . . voluntarily choose to comply with the man made laws which serve to bring harmony to society but no such law nor their enforcers have any authority over me! . . . I have committed no crime in the Dept of Safety. Therefore am not subject to any penalty as opposed of me breaking the rules of D.O.S! . . . It is the duty of the facility head designee when required to authorize an extension to char[g]e the [Plaintiff] beyond 72 hours and rob him the time of offense had beyond expired are conflict to each and a violation of the time frames . . . .

(Id. at 15 (emphasis omitted).) As a remedy, the Grievance demands: "Get me out this lladeard [sic] cell A-7 to A-[illegible] or investigation why Sgt Weik obstruct Justice . . . T.V. Guide, Fresh Air (ASAP) . . . or Reward 100,000.00 . . . ." (Id.)

15

Throughout the grievance process, NC DPS officials perceived the Grievance as a challenge to a disciplinary hearing and punishment that Plaintiff received. For instance, the Step 1 response states: "In response to your Grievance, you were given a fair hearing by [the] Disciplinary Hearing Office; your rights were not violated. You do not get to pick your cell that you sleep in. We follow Division of Prison Policy. No further action needed." (Id. at 16.) In turn, the Step 2 response provides: "The response in Step 1 of your Grievance adequately addresses your concerns. No further action is recommended." (Id.) Finally, the Step 3 decision (i) characterizes the Grievance as "assert[ing] that [Plaintiff] received an unfair disciplinary report," (ii) observes that NC DPS staff conducted "an investigation of [Plaintiff's] complaint . . . . [and] concluded that [Plaintiff] has not been treated unfair[ly] or outside the scope of correctional policies and procedures," and (iii) determines that "staff has adequately addressed [Plaintiff's] grievance concerns." (Id. at 17.)[10]

---

10 More fully, the Step 3 Grievance Examiner provided the following findings and disposition order:

> [Plaintiff] filed this grievance on October 28, 2012 at Lanesboro Correctional Institution. He asserts that he received an unfair disciplinary report.
>
> Staff response indicated that an investigation of [Plaintiff's] complaint was conducted. Staff concluded that [Plaintiff] has not been treated unfair[ly] or outside the scope of correctional policies and procedures.

In sum, the Grievance challenges a disciplinary proceeding and punishment that Plaintiff received (in response to an unspecified incident). (See id. at 15-17.) This Grievance did not alert NC DPS officials to Plaintiff's Claim nor provide them with a fair opportunity to address that Claim (by, for instance, investigating whether Defendant permitted Cannon to retrieve a weapon and/or opened Plaintiff's cell door to facilitate Cannon's attack). Accordingly, the Grievance cannot satisfy Plaintiff's PLRA exhaustion requirement as to the Claim. See Moore, 517 F.3d at 729 (concluding that grievance failed to satisfy the PLRA exhaustion requirement where it "did not give prison officials a fair opportunity to address the alleged [wrong]").

Because these affidavits "establish all essential elements of" Defendant's affirmative defense, the burden shifts to "[P]laintiff to come forward with specific facts showing that there is a genuine issue for trial." Ray Commc'ns, 673 F.3d at 299 (internal

---

> This examiner has carefully reviewed the grievance and the response given by the staff in the DC-410A response. From this review, I am convinced that staff has adequately addressed [Plaintiff's] grievance concerns. I adopt the facts found by the staff investigator.
>
> On this record, [Plaintiff's] allegations are insufficiently supported. Thus, this grievance is dismissed for lack of supporting evidence.

(Id. at 17.)

17

quotation marks omitted). Even treating the Answer and Memorandum as verified filings, Plaintiff fails to carry this burden.

Plaintiff asserts that he "submitted a grievance in the matter," which he pursued unsuccessfully through "all three steps" of the grievance process. (Docket Entry 62 at 1.) In support of this assertion, Plaintiff relies on "Exhibit-A," "the affidavit by Jerline Bennett, Doc. 53, Pages 15, 16, & 17 of 17." (Id.) Given Plaintiff's reclassification of Bennett's affidavit's pagination, it remains unclear whether Plaintiff seeks to rely on Bennett's three-page affidavit or the Grievance, which appears (at pages 15-17 of Docket Entry 53) as an exhibit to Bennett's affidavit. As illustrated above, however, both the text of Bennett's affidavit and the Grievance support Defendant's exhaustion defense by establishing Plaintiff's failure to grieve the Claim.

This conclusion holds true even if the Court infers from Plaintiff's assertion (see Docket Entry 62 at 1) that he filed the Grievance regarding "the matter" of his altercation with Cannon (i.e., that the Grievance challenges disciplinary proceedings triggered by Plaintiff's September 2012 altercation with Cannon). Even understood as challenging disciplinary proceedings regarding Plaintiff's fight with Cannon, the Grievance "did not give prison officials a fair opportunity to address," Moore, 517 F.3d at 729, Plaintiff's allegation that Defendant permitted Cannon to retrieve a weapon and enabled Cannon's attack on Plaintiff by opening

18

Plaintiff's cell door.  Thus, it does not fulfill Plaintiff's exhaustion obligation.  See id.

Furthermore, the 2013 Grievance does not salvage Plaintiff's exhaustion assertion.  As an initial matter, notwithstanding Plaintiff's alterations, the 2013 Grievance does not constitute part of the Exhibit B referenced in Bennett's affidavit.  (See generally Docket Entry 53.)  Moreover, Plaintiff filed the 2013 Grievance more than a year after the events underlying the Claim occurred (compare Docket Entry 62 at 14 (September 24, 2013), with Docket Entry 6 at 4 (September 14, 2012)), rendering it procedurally improper as a challenge to Defendant's alleged actions, see ARP, Ch. G, Section .0306(b)(2).

Even accepting Plaintiff's implicit contention that it qualifies as a "grievance[] filed by [Plaintiff] during th[e relevant] time period" (Docket Entry 53, ¶ 17), the 2013 Grievance fails to save his Claim.  The 2013 Grievance challenges the destruction of Plaintiff's property following an incident in August 2013.  (See Docket Entry 62 at 14-16.)  A grievance regarding the destruction of property in the fall of 2013 does not satisfy the administrative exhaustion requirement for a Claim that, in 2012, Defendant permitted a gang member to obtain a weapon and then opened Plaintiff's cell door to facilitate that gang member's attack on Plaintiff.  See Moore, 517 F.3d at 729.

19

In short, the evidence establishes that, at most, Plaintiff's "grievance in the matter" (Docket Entry 62 at 1) challenges the fallout from his altercation with Cannon rather than Defendant's alleged facilitation of that altercation. As such, Plaintiff fails to establish that a genuine dispute exists regarding his failure to exhaust administrative remedies on the Claim. See Scott, 550 U.S. at 380 ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." (internal quotation marks omitted)). The Court should therefore grant the Summary Judgment Motion.

## CONCLUSION

The evidence conclusively establishes that Plaintiff failed to exhaust administrative remedies on his Claim against Defendant, a necessary PLRA prerequisite to litigating the Claim.

**IT IS THEREFORE RECOMMENDED** that the Summary Judgment Motion (Docket Entry 49) be granted.

This 24th day of January, 2017.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**